## GILMAN *v.* CUTTS.

The statute of limitations which is in force at the time when an action is commenced, is the one to govern, provided the demand upon which the suit is brought, was not barred by the former statute when the new one was passed; so that no vested rights, are impaired.

A., brought his action January 27th, 1849, on a promissory note dated October 1, 1838, payable on demand. A new statute of limitations went into effect; March 1, 1843; at which time the note was not barred by the former statute. *Held,* that the new statute was the one to govern.

Under the statute of limitations of this State, any and every absence from the State whether temporary or otherwise, which is such that the creditor cannot, during the same, make legal service upon the debtor, must be reckoned.

Where a debtor was temporarily absent from the State at several different times, for a number of months at a time — *held,* that the statute ceased to run during each and all of the absences, if they were such that legal service could not be made upon him.

ASSUMPSIT, on a promissory note, dated October 1st, 1838,

payable on demand.    The action was commenced, January 27th, 1849.

On the general issue, with a brief statement of the statute of limitations, the evidence tended to show that at the date of the note, the defendant resided at Exeter, in this county, and was by trade a chaise-trimmer and harness-maker ; that in the fall of 1839 or 1840, he left, and was absent for one and a-half or two years, as he said in Ohio ; and in 1842 or 1843, he was again absent eight months or a year as he said, in Ohio.    After his return from Ohio, in 1843, he was absent at Boston or its vicinity, three or four seasons, working at his trade ; leaving Exeter usually in March, and returning in October or November.    During all these absences, he left his wife at Exeter, at the house of her father ; and while absent in Massachusetts, he usually visited Exeter as often as once a fortnight.    During the winters, after his return from Ohio, he resided at Exeter, and worked at his trade or other branches of business, as he could find employment.    In several of the years after his return from Ohio, he was taxed, and paid his taxes in Exeter.

The court instructed the jury, that the case must be governed by the statute of limitations now in force, and not by the statute in force at the date of the note.    That if the defendant, at the time he went out of the State to reside, intended to return to his home here, at a certain time, or upon the occurrence of some event to which he had then a distinct reference, his absence would be what the law denominates temporary, and he would not thereby change or lose his residence in this State, but would still remain an inhabitant and resident here.    That a personal absence from the State, and actual residence out of it, without changing or losing his legal residence in the State, was not such an absence or residence out of the State, as was contemplated by the statute of limitations.    That to bring a person within that exception, there must be such an absence from the State and such residence elsewhere, without any present intention to return to the State, as would deprive him of his legal residence here ; otherwise the time of such absence could not be deducted in estimating the period of six years.

VOL. XXIII.        48

The jury found a verdict for the defendant, which the plaintiff moves may be set aside by reason of supposed errors in the charge of the court.

*Wood,* for the defendant.

1.   The only difference between the old statute and the new, is, that under the old, a residence out of the State did not prevent the statute from running, if the defendant left attachable property in the State; while under the new, any actual residence out of the State prevents the statute from running, under all circumstances.   The plaintiff cannot complain of the ruling upon this point, for he has all the rights under the new statute, that he had under the old, and even more.   He loses no rights which were vested in him, when he commenced his action; by governing his case by the new statute, and such being the case, the new is to govern.   *Woart* v. *Winneck,* 3 N. H. Rep., 473; *Merrill* v. *Sherburne, & al.,* 1 N. H. Rep., 199; *Clark* v. *Clark,* 10 N. H. Rep., 386; *Leighton* v. *Walker,* 9 N. H. Rep., 59; *Ellis* v. *Page,* 1 Pick. Rep., 43; *Rutland* v. *Mendon,* 1 Pick. Rep., 154.

All statutes of limitation relate only to the remedy which a party is to abide by, in prosecuting his suit, and not to the nature of his contract.   Story's Con. Laws, § 11.   The statutes in force when, and at the place where the action is brought, must govern the cause.   *Brigham* v. *Bigelow,* 12 Met. Rep., 171; 11 Mass. Rep., 36.   If the note had been barred under the old statute, when the new was passed, then we admit that the case should be governed by the old statute; but as the note was not then barred, the new statute governs.   *Willard* v. *Clark,* 7 Pick. Rep., 435.

2.   A residence or domicil, which we consider synonymous terms, is not lost, unless the party remove from the State with the intent of abandoning the same as his home.   To render the residence changed, there must be, not only an actual removal from the State, but an intent to abandon it as a home.   Story's Con. Laws, § 44; *Harvard College* v. *Gore,* 5 Pick. Rep., 370; *Lincoln* v. *Hapwood,* 11 Mass. Rep., 350; *Bump* v. *Smith &*

*al.*, 11 N. H. Rep., 48; *Atherton* v. *Thurston*, 8 N. H. Rep., 178; *Shattuck* v. *Maynard*, 3 N. H. Rep., 123; *Thorndike* v. *Boston*, 1 Met. Rep., 242; *Sears* v. *Boston*, 1 Met. Rep., 250. A temporary absence is when a party leaves with the intent to return at the happening of a certain event; and such was the ruling of the court.

3. Statutes of limitation, are statutes of repose, and are always a bar, unless some exceptions are incorporated into the same. Such an exception is made in the statute under consideration. The time when a party is out of the State, and residing therefrom *actually*, as we understand the statute, must be deducted in estimating the time of limitations; and such a residence only as shall put a defendant beyond legal process, is what is intended to be guarded against in this exception. *Galusha* v. *Cobleigh*, 13 N. H. Rep., 85.

*Stickney & Tuck*, for the plaintiff.

The principal question arising in this case, is, what kind of absence or residence out of the State was intended by the saving or exception in our statute of limitations. We contend that it was a personal absence or residence, or rather that a personal absence and residence out of the State, come within the exception, and stop the running of the statute, though such absence was temporary, and the defendant intended to return to the State at some future time. It has been held that " out of the State," and " beyond the sea," mean the same thing. *Galusha* v. *Cobleigh*, 13 N. H. Rep., 79.

In putting a construction upon a statute, regard should be had to the occasion and object of the statute, and the construction which has been put upon similar statutes. It very frequently happens that individuals are absent, and reside out of the State, for temporary purposes, and afterwards return to the State, and there would seem to be some necessity for an exception to apply to such cases; but it seldom happens that they move out of the State with the intention of residing away permanently, and afterwards change their minds, and move back. Such occurrences are so seldom, that they would not seem to require an excep-

tion to the statute to meet them. It is much more reasonable to suppose that the exception was intended to apply to cases which are constantly occurring, as where debtors are absent temporarily, and for temporary purposes.

The statute bars all claims not sued within six years. A temporary absence may continue more than six years, as where a person goes to sea, or to some other State to attend to some particular business, and intends at the time to come back as soon as he completes his business; yet according to the charge in this case, that would be only a temporary absence, and would not come within the exception in the statute. Still it would often deprive the creditor of all opportunity to make a legal service upon the debtor, and the debt would be lost. If it be held, that a legal residence only is within the exception, there would seem to be but little occasion or use for such an exception.

In order to bar a debt, the debtor should be in the State the entire period of six years, so that the creditor can arrest him, or make other legal service upon him. Any absence which prevents such a course from being taken, comes within the exception. It is very evident that a temporary absence, may prevent legal service from being made. If a debtor goes to sea, or to some other State for temporary purposes merely, and remains away one, two or six years, and leaves no property or family in the State, we know of no way by which a legal service can be made in his absence.

It is well settled that a temporary return under the old statute, would cause the statute to begin to run. *White* v. *Bailey*, 3 Mass. Rep., 273 ; *Fowler* v. *Hunt*, 10 Johns. Rep., 464 ; *Byrne* v. *Crowningshield*, 1 Pick. Rep., 263 ; *Faw* v. *Roberdean*, 3 Cranch's Rep., 174 ; *Shapleigh* v. *Felt*, 3 N. H. Rep., 121 ; *Hill* v. *Bellows*, 15 Vermont Rep., 727. If a return for temporary purposes was sufficient to set the statute running, it would seem upon the same principle that an absence for temporary purposes, woud be sufficient to prevent the running of the statute.

In further support of our views, we refer the court to *Smith* v. *Bond*, 8 Ala. Rep., 386 ; *Dunning* v. *Chamberlain*, 6 Vermont Rep., 127 ; 3 Gilman's Rep., 637 ; 4 Gilman's Rep., 125.

The authorities cited by the defendant's counsel, do not apply in this case, but to residences of a different character, and for different purposes. In determining what constitutes the residence of a person, so as to give him a right to vote, and to render him liable to be taxed or to do military duty, our courts have decided that it must be his legal, and not his personal residence. There may be good reasons for making that distinction in residences, when applied to those subjects, as a person may have a personal residence in one town, and legal residence in another. In those cases it became necessary to decide in which town the person should exercise those rights, and be subject to those liabilities.

EASTMAN, J. A difference exists between the statute of limitations in force at the time the note in suit was made, and that in force when the action was commenced. Under the former statute, a residence out of the State did not prevent the statute from running, if the defendant left property attachable in the State. In the present statute the provision in regard to leaving property in the State, is not embraced; so that residence out of the State prevents the statute from running, whether property be left or not.

Upon general principles, the law of the country where the contract is made or is to be performed, furnishes the rules for expounding the nature, and extent of its obligations. But the law of the country where it is sought to enforce the performance of a contract, governs all questions of remedy. The forms of remedies, the modes of proceeding, and the executions of judgments, are to be regulated solely and exclusively by the laws of the place where the action is instituted. Whatever belongs to the remedy, is governed by the law of the place where the remedy is sought. This principle applies to *time* as well as place. The statute of limitations which is to control, is that which is in force at the time and place, when and where the remedy is brought. Such are the general principles. *Ferguson* v. *Fyffe*, 8 Clarke & Finelly's (Parliamentary) Rep., 121; *Bulger* v. *Roche*, 11 Pick. Rep., 36; *Carnigie* v. *Morrison*, 2 Met. Rep., 281; *Medbury* v. *Hopkins*, 3· Conn. Rep., 472; *Ruggles* v. *Keeler*, 3

Johns. Rep., 261; *Harper* v. *Hampton*, 1 Harr, & Johns. Rep., 453; *Van Reynisdyk* v. *Kane*, 1 Gallison's Rep., 371.

The principle is not varied if the contract was made in the same jurisdiction where the action is brought. If no vested right is taken away, the law in force at the time the remedy is sought, is the one to govern. A new statute is not retrospective if the right which is to be affected by it has not become vested; otherwise, if it has. *Patterson* v. *Gaines & ux.*, 6 Howard's (U. S.) Rep., 550; *Brigham* v. *Bigelow*, 12 Met. Rep., 171; *Woart* v. *Winnick*, 3 N. H. Rep., 473; *Willard* v. *Clarke*, 7 Met. Rep., 435; *Bickford* v. *Boston & Lowell R. R.*, 21 Pick. Rep., 109; *Gaskins* v. *The Commonwealth*, 1 Call's Rep., 168; *Clarke* v. *Clarke*, 10 N. H. Rep., 386. The note in suit was not barred at the time the new statute went into operation. The rights under it had not become fixed and the new statute therefore must govern. No rights are impaired by such a construction, and the ruling of the court in this respect was correct.

Upon the second question raised in the case, the instructions of the court proceed upon the ground, that the absence from the State must be an actual, substantial, legal change of residence, in order to prevent the statute from running; that no temporary absence can be deducted from the six years. The statute is as follows: "If the defendant at the time the cause of action accrued, or afterwards, was absent from and residing out of the State, the time of such absence shall be excluded in the computation of the several times before limited for the commencement of personal actions." Rev. Stat., ch. 181, § 9.

These provisions are comparatively new. Under the English statute of limitations and those that existed in this country until somewhat recently, when once the statute commenced to run, no subsequent disability affected it. *Jackson* v. *Livingston*, 15 Johns. Rep., 169; *Dow* v. *Warren*, 6 Mass. Rep., 328; *Catterel* v. *Dutton*, 4 Taunton, 828; *Walden* v. *The Heirs of Gratz*, 1 Wheaton's Rep., 296; *Hall* v. *Vandergrift*, 3 Binney's Rep., 374; *Didier* v. *Davison*, 2 Barbour's Ch. Rep., 486; *Randall* v. *Wilkins*, 4 Denio's Rep., 577; *Doe* v. *Jones*, 4 Term Rep., 300.

Gilman *v.* Cutts.

The legislatures of several of our States have, however, interfered and in effect declared, that the time during which a party is absent from, and residing out of the State, shall not be deducted from the time of limitation; that during the absence the statute shall cease to run. Statutes similar to our own have been passed, and in a few jurisdictions have undergone, to some extent, a judicial construction. In New-York, it has been held, in the supreme court of one of their districts, that successive absences cannot be accumulated, and the aggregate deducted from the time elapsed after the accruing of the action; that after a single departure and return, the statute will run, notwithstanding any subsequent departure. *Cole* v. *Jessup*, 2 Barbour's Sup. Court Rep., 309. A similar construction was given to the same statute by the United States circuit court for New-York, in 1846, in *Door & al.* v. *Swarthout*, New-York Legal Observer, 172. The ruling in the last case, was made after some hesitancy. The decisions appear to have gone upon the ground that the legislature intended to provide for but one absence; and that with respect to departures and returns after the first, actions would stand upon the same footing with analogous cases prior to the passage of the statute. Nothing is suggested in the course of the opinions given, which would tend to show that a temporary absence was not as effectual to prevent the statute from running, as a permanent one. The words of the New-York statute applicable to this precise point, are, " shall depart from and reside out of this State," and yet the court in both of the cases speak of them as *absences*. In the one case the marginal note is, " the statute of limitations ceases to operate only during the period of one service; " in the other it is, " the statute provides only for a single departure and return."

In *Smith* v. *Heirs of Bond*, 8 Ala. Rep., 386, it was held, that to complete the bar of the statute, the debtor must have been within the State subject to its process, during the entire period provided as a bar; but such period of time need not be continuous, but may be composed of different periods of time. The court say: " Our opinion therefore, is, that to make the bar of the statute effectual, the debtor must have been within the

State, subject to be sued, during the whole period provided as a bar, but it is not necessary that it should be continuous ; it may be composed of different periods of time, if the aggregate makes the period of time which is designated as a bar." In *Vanland-ingham* v. *Huston*, 4 Gilman's (Ill.) Rep., 125, it was decided, that if a party be out of the State, so that process cannot be served on him, the statute of limitations ceases to run for the time being ; and in such case it is not necessary in order to produce this result, that the party should remove absolutely ; that every absence from the State, whether there exists in the debtor the *animus revertendi* or not, suspends the operation of the statute. The case of *Chenot* v. *Lefevre*, 3 Gilman's Rep., 637, is to the same effect. These are all the authorities that we have been able to find, where the question has been mooted. The statutes in those States where the last decisions cited have been made, differ from ours in phraseology, and perhaps would justify a somewhat different construction ; but their object is evidently the same as that of ours.

The several cases which we have cited, bearing upon this question, are all in conflict with the ruling in the case before us. The Alabama and Illinois decisions differ from those made upon the New-York statute, but they all appear to agree that temporary absence is sufficient to stop the statute from running. And we think such must have been the intention of our legislature in the enactment of our statute. The terms " absent from, and residing out of the State," could not have been intended to mean only a legal removal from the State. Such a construction would be too limited, and would, we apprehend, defeat to a considerable extent, the object of the statute. The effect too, would be to enable a debtor to avoid entirely the payment of a note. He might be a man without family, and, without the knowledge of his creditor, might leave the State, on business or pleasure, and go to Europe, or some distant part of our own country, with the positive intention of returning at the expiration of six years, and actually return at that time ; and yet, if such temporary absence is not to prevent the statute from running, and is not to be deducted from the computation of the time limited for the commencement of the action, the debt is legally lost.

We think also, that the legislature did not intend that the statute should be suspended in its operation during one absence only. The tendency of the legislation in this State, upon the subject, has been to enlarge rather than curtail the exception to the original English statute. Thus in the last revision, the clause existing in the former statute, providing that if the debtor left attachable property in the State, the statute would continue to run, was omitted. And to hold that the statute ceases to operate only during the period of one absence, would be to place upon it a straitened construction which, we think, was not the intention.

The conclusion, then, to which the court have arrived, is that any and every absence, whether temporary or otherwise, which is such that the creditor cannot, during the same, make a legal service upon the debtor, must be reckoned; that the intention of the legislature was, that all such absences should be considered; that the statute does not confine it to one absence simply, but all must be taken together, in computing the time to be deducted, from that between the maturity of the note, and the commencement of the suit. The verdict must therefore be set aside, and a

*New trial granted.*